The Chancellor.
The hill in this case is tiled hy five complainants, each of them owning a dwelling house, and, except one of them, occupying the same, in the city of Trenton. They seek to enjoin the defendants from the erection of a building, intended for manufacturing purposes, in the neighborhood of their dwelling houses. On presenting the hill to one of the injunction masters of the court, an injunction was ordered. The defendants have answered the bill, and counsel on both sides ha, > been heard on a motion to dissolve the injunction.
About fifteen years ago, six moderate sized, but handsome dwellings, were erected on the southerly side of State street, west of the canal and railroad. Four of these dwellings are owned hy the complainants. On the opposite side of State street, in front of these dwellings, which *206 are known as “the cottages,” is a tract of land, containing some eight or ten acres. In 1849, this tract was laid out into streets and building lots. On that portion of it lying directly in front of the cottages, there is one small dwelling house, which was erected about three years ago, and is owned and occupied by one of the complainants, Richard O. Wolcott. It is the only dwelling on that part of the tract directly in front of “the cottages,” and from anything that appears in the case, there are no actual preparations for the erection of any more. The depots of the Gamden and Amboy and Belvidere Delaware Railroads, and the basin of the Delaware and Raritan canal, adjoin the tract on the west, and the principal dejmt building is within sixty feet of the most westerly o'f “the cottages,” which is kept as a small tavern. On Carroll street, running at right angles with the lots on which “ the cottages” are situated, the defendants have purchased a lot, seventy-five feet front, and one hundred feet deep. They intend to erect on this lot a three-story brick building, one hundred and thirty-two feet distant from the dwelling house of the complainant, Wolcott, and seventy-one feet from his barn. The distance to the nearest “cottage” will be two hundred and. seventy feet. It is the intention of the defendants to place in the building they propose erecting a steam engine of twenty horse power, for the purpose of driving turning lathes for turning iron and wood, a planing machine, and other machinery necessary for making agricultural implements, and to carry on that business in the building. The question is, will the court continue the injunction to prevent the defendants erecting such a building for such purposes, on the ground of its being a nuisance, and, as such, injurious to the property of the complainants ?
The power of the court to interfere by injunction to prevent the erection or continuance of a nuisance, which materially injures the property or person of another, is not denied. A nuisance is “ anything that worketh hurt, *207 inconvenience, or damage.” 3 Bl. Com. 213. But it is not every such nuisance that a court of equity will interfere to prevent or abate by the exercise of its jurisdiction. But “where the injury is irreparable, as where loss of health, loss of trade, destruction of the means of subsistence, or permanent ruin to property, may or will ensue from the wrongful act of erection, in every such case courts of equity will interfere by injunction, in furtherance of justice and the violated rights of the party.” 2 Story’s Eq. J. 926. The case must be one of nuisance at law, and in respect to which the party can maintain an action for the alleged injury to his legal rights. The court will interpose to prevent the prosecution of a legal trade, where it is carried on in such a manner as to injure an adjoining tenement, or to affect the air with noisome smells, gases, or smoke, injurious to health, or renderingthe enjoyment of life within a neighboring dwelling house uncomfortable. But in such a case the nuisance must be either in actual existence, and established by clear and satisfactory evidence — or the prosecution of the business from which the nuisance is apprehended, and the establishment of which the court is called upon to prevent, must be of a character as necessarily to produce the mischief'which the courtis called upon to prevent. It may be very annoying to a man to have a small grocery store erected adjacent to his dwelling house; the attraction of hies in the summer, and the unavoidable smell it produces, may be extremely disagreeable. The noise of a shoemaker shop or of a tin shop would be to some men extremely annoying, and render their dwellings to them uncomfortable. There is no redress for such grievances while the trade is prosecuted in a legal manner. And so, generally, with all manufacturing establishments. Their noise and the bustle they create do not add to the comfort and enjoyment of adjoining dwelling houses. On the contrary, they are generally very great annoyances; yet our towns and large cities are filled with them. They have been built up by *208 such establishments, and owe their prosperity and growing importance to them. Steam engines for manufacturing purposes are running, day and night, in the very heart of our cities. It must be a very strong case, marked by some very peculiar features, to justify a court of equity to interfere by injunction and prevent the erection of a building for manufacturing purposes on the ground of its being a nuisance to an adjoining dwelling house. The industry of counsel furnished me, on the argument of this case, with most, if not all the cases to be found in the books, where the jurisdiction of courts of equity has been invoked to prevent the erection and continuance of nuisances. And yet not a precedent has been found where the court has interfered to prevent the erection of a building to prosecute a manufacturing enterprise similar to the one the defendants propose to establish..
A brew house, glass house, lime kiln, dye house, smelting house, tan pit, chandler’s shop, or swine sty, if set up in such inconvenient parts of the town as that they incommode the neighborhood, are common nuisances. Waterman’s Eden 264, and notes. If it was contemplated to erect such an establishment so near the dwelling house of an individual, that it must necessarily be exposed to the smoke, or noisome smells, which are the unavoidable consequences of such establishments, the Court of Chancery might, in most such cases, properly interfere to prevent its erection or continuance; because the nuisance would be of a character to render the occupation of an adjacent dwelling infected by its consequences intolerable. No evidence would be required, in such a case, to establish a nuisance, but the fact of its erection and its contiguity to the dwelling. The cautious manner in which the court has exercised its jurisdiction in cases of nuisances will appear from an examination of some of the authorities.
Baines v. Baker (Ambler 158) was a bill for an injunction to stay building an hospital for people infected with *209 the small-pox in Cold Bath Fields, very near the houses of several tenants of the plaintiff. The injunction was refused; and the Lord Chancellor said, it was a “charity like to prove of great advantage to mankind: such an hospital must not be far from a town, because those that are attacked with that disorder in a natural way may not be in a condition to be carried far.” He stated one of the questions to be — whether it was a nuisance at common law; and said, “ Bills of this sort are founded on being nuisance at common law.” This case is frequently cited to show that the court will not interfere in any case to prevent a man’s dwelling house and family from apprehended danger; that the fears of mankind, however reasonable, will not create a nuisance. And in 3 Atk. 750, case 288, Lord Hardwick is reported as using the language, “ that the fears of mankind, though they may be reasonable ones, will not create a nuisance.” Notwithstanding these authorities, I do not think a Court of Chancery would now hesitate a moment in granting an injunction to stay the erection of a hospital or of a gunpowder magazine in the neighborhood of a town, and near to dwelling houses, and on the ground of the reasonable fears and apprehensions such erections reasonably excite. But these cases are important to show that the public good will not be lost sight of; and that, generally, a court of equity will compel an individual, who asks protection against an inconvenience or apprehended damage arising from the prosecution of some legal enterprise, to establish his right to protection by the verdict of a jury before the court will interfere in his behalf.
In the eases of Fishmongers’ Co. v. East India Company, 1 Dick. 163, and The Attorney General v. Nichols, 15 Ves. 339, it was very evident that the alleged nuisances were injurious to the complainant’s dwellings, diminishing their light, and rendering them less comfortable. The court said, in those cases, that a diminution of the value of premises is not a ground for injunction; and that while *210 the court might interfere for the protection of ancient lights, that it would not interpose upon every degree of darkening ancient lights and windows.
The case of The Attorney General v. Cleaver, 18 Ves. 211, is much to the point, and the remarks of Lord Eldon worthy of notice. . An information by the Attorney General, at the relation of several individuals, was filed to restrain the defendants from manufacturing soap or black ash, and from boiling, melting, calcining, or burning any of the materials used in manufacturing soap or black ash in their manufactory; or that they might be restrained until the trial of an indictment then pending against them. The motion for the injunction was made upon several very strong affidavits, describing the process as both offensive and unwholesome, and stating the effects of the smell from the vapor, even across the river, and further to a considerable distance. The Lord Chancellor, in remarking upon the case, observed, that he did not recollect, in his experience, an instance of an injunction actually granted, except a case before Lord Loughborough, and that the only precedents with which he was acquainted for that decision were those in Ambler and Atkyns. “What is a nuisance,” he says, “considered with reference to carrying on a trade, is a question of fact, which it is not very easy to determine. I have frequently known verdicts deciding manufactories to be no nuisance, by which, it cannot be denied, the whole comfort of life and health must, in some degree, be affected.” He refers to a note of a case of The Duke of Grafton v. Hilliard, in 1736, in which the duke filed a bill to restrain the defendants from burning brick earth in the fields close to Hanover square. The court refused the injunction, observing, that the manufacture of bricks, though near the habitations of men, if carried on for the purpose of making habitations for them, is not a public nuisance. It is very clear that Lord Eldon denied the right of the court to interfere, by injunction, to prevent the prosecution of, *211 a legal trade, until it was declared to be a nuisance at law.
In Crowder v. Findler, 19 Ves. 616, the complainants were carrying on paper mills, and one of them resided in a house adjoining the mills. The defendants began to erect a building, at the distance of about two hundred yards from the paper mills, intended for a corning house or magazine. The Lord Chancellor said he was inclined to think that an injunction might be granted, in the case, upon the head, not of nuisance, but of danger to property. An examination of that case will show it to be one appealing very strongly to the court for protection. It seemed to require immediate action. If the damage apprehended did ensue, the injury was irreparable. And yet it was with apparent great reluctance that a partial injunction was granted until the question of nuisance should be tried at the next assizes.
Sampson v. Smith, 8 Sim. 272, was a case where the bill complained of a manufactory in which the defendants carried on the business of engineers. The complaint was as to the unlawful manner in which the business was prosecuted; that the top of the brick work of the chimney was not as high as the roofs of the adjoining houses; that the body of smoke which issued from the chimney was very great, and that the blacks and soot, mingled therewith, descended in such dense bodies into the street, that the shop and house of the complainant were filled therewith, and his goods and furniture very much injured, and the health and comfort of his family prejudiced and impaired thereby. There was a demurrer, generally, to the bill, and also ore tenus, for want of parties. The Vice Chancellor decided that the bill was maintainable, and overruled the demurrer. lie also decided that the attorney general was not a necessary party, but that an individual who sustains a special damage from a nuisance may file a bill without the attorney general. It does not appear that any application was made for a preliminary injunction.
*212 In the case of Catlin v. Valentine, 9 Paige 575, an injunction issued to prevent the defendant from erecting a jS,laughter house in a thickly settled portion of the city of New York. The Chancellor put it upon the ground, that the occupation of a building in a city as a slaughter house, is prima facie a nuisance to the neighboring inhabitants. And the case, in Georgia, of Coker v. Birge (reported in 9 Georgia Rep. 424, and in 10 Georgia Rep. 336), declares that a livery stable in a city erected within sixty-five feet of a hotel is prima facie a nuisance, and maybe restrained by injunction. The reasoning of the court in the latter case seems to be this: the complainant alleged, in his bill, that if the defendant should be permitted to complete the' stable, and appropriate it to the purpose designed and intended, that the injury to the complainant and his family, as well as to his property, would be irreparable ; that it would result in the loss of health and comfort to his family, of patronage to his hotel, and in a ruinous depreciation of the value of his property, in consequence of the unhealthy effluvia that would arise from the stable, the collection of swarms of flies, and the interminable stamping of horses therein. The court say that the statement of facts contained in the bill must, for the purpose of obtaining the injunction, be considered as true. They assume as facts the mere opinion of the complainant, as to the irreparable injury, to wit, that it will result in the loss of health and comfort to the complainant and his family, in the loss of patronage to his hotel, and in a ruinous depreciation to the value of his property, in consequence of the effluvia that will arise from the stable, the collection of swarms of flies, and the interminable stamping of horses therein. If the allegations of the bill are to be taken as true, then the nuisance is established, and there is no necessity of a trial at law to establish the fact. The injury being irreparable, the propriety of the injunction cannot be questioned. But I do not think the authorities support such a position. The *213 principle upon which the court acts, to be collected from the cases, is this: if the nuisance is admitted, or if the erection contemplated must, from its character, necessarily be a nuisance to the complainant, and his legal remedy is not adequate, the court will enjoin it. A livery stable, if properly kept, is not prima fade a nuisance to neighboring dwellings. In 9 Georgia Rep. 340, the court says, “But to do this” (that is keep the stable in such a way as that it will not be a nuisance) “requires extreme vigilance on the part of the proprietor. The leaves and manure are to be removed, and the stalls sprinkled with lime-water daily. Will this be done ? What security has the complainant that this extraordinary care will be bestowed?” But was not the defendant entitled to the benefit of the presumption that he would conduct his business in a lawful manner? Is it right for'this court to interrupt a man in carrying on a lawful trade, upon the assumption that he will conduct it in such a manner as to render it a nuisance to his neighbors ?
The business which these defendants propose establishing is a lawful one. Just such a manufacturing establishment as they propose erecting exists in numbers in all our large towns where manufactories exist to any extent. They exist in the very centre of our cities and villages, with dwelling houses all around them; and there is no instance, to my knowledge, where they have been held to be nuisances. They are not considered in our community, and I do not, therefore, feel myself at liberty to declare this one to be prima fade a nuisance. In what respect do the complainants allege that the contemplated manufactory will prove a nuisance ? They allege that it will destroy the comfort and quiet of the complainant Wolcott’s, family, and make his dwelling house and premises unpleasant, uncomfortable, and unsafe, by means of the noise necessarily attending the working of such a steam engine and machinery, the increased liability to fire therefrom, and other matters necessarily and usually *214 connected with such establishments, and his family will bo compelled to live in great discomfort and in a continual state of apprehension and alarm. And the other complainants allege that they believe that the said engine and machinery, by the noise made in working the same, and by the smoke and cinders therefrom, and increased liability to fire in and about the same, and other matters connected therewith, will be a nuisance to them and their dwellings, and will greatly and permanently depreciate the value of their said dwelling houses and premises. It is the noise, then, and smoke and cinders, and danger from fire, that will make this manufactory a nuisance to the complainants. Is the court to assume that the ordinary running of a twenty horse power steam engine, driving lathes and planing machines, will be such an annoyance to the neighborhood as to justify the court in enjoining the carrying on such a business in the neighborhood of half a dozen dwellings ? I think not. As to the smoke and cinders — if the steam engine is driven in such a way as to throw them into and upon the dwellings, so as to annoy their inmates — against such annoyance this court will protect the complainants. But the court will not assume that such consequences are to follow. They are not the necessary results of driving such a power. And as to the danger from fire, experience proves that the apprehensions of the complainants are not well founded in this particular.
The location which the defendants have selected does not manifest a disposition, on their part, to annoy the complainants or to injure their property. There are several acres of vacant land in the tract they have selected, and but a few dwelling houses in the immediate vicinity. The site is a very advantageous one for their business. The vicinity of the railroads and canal, and their depots, is much more suitable for manufacturing establishments than for dwelling houses. It is not very likely that dwelling houses of the first class will be erected any *215 nearer the depots than the proposed building of the defendants. If the court declares that no such manufacturing establishments as the defendants propose shall be erected on this tract, then the land between this location and the canal will probably be occupied by small tenements or work shops of an inferior kind. This court may, by its action, do a great injury to trade, and lessen the value of other property, which is as much to be regarded as the complainants’. Should the consideration, that some fifteen years ago these “six cottages” were erected on State street, and three years ago a small tenement on this tract of land, prevent that land which lies adjacent to the canal and railroad, and from its position so well adapted for manufactories, from being occupied by all factories driven by steam engines ? It appears to me that the noise of this twenty horse power steam engine, its smoke and cinders, will not add much to the same annoyances which now exist from the bells and steam whistles, smoke and cinders, proceeding from machinery used on the railroads and canal.
I am of the opinion that the injunction should be dissolved with costs.